# WILLIAMSON v. NEW JERSEY.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW JERSEY.

No. 193. Argued March 12, 1889. — Decided April 1, 1889.

The legislature of New Jersey, by a statute, enacted that a "poor farm," belonging to the city of New Brunswick, and situated in the township of North Brunswick, should be at all times thereafter liable and subject to taxation by that township so long as it should be embraced within its limits. Subsequently, it was enacted by a statute, that the property of the cities of the State, and all land used exclusively for charitable purposes should be exempt from taxation, and that all inconsistent acts were repealed. The "poor farm" was used exclusively for charitable purposes; *Held:*

(1) The provision of the first statute was repealed;

(2) The legislature could constitutionally repeal the power of taxation given by the first statute;

(3) The first statute did not create a contract between the State and the township, the obligation of which could not be constitutionally impaired by its repeal.

The power of taxation on the part of a municipal corporation is not private property, or a vested right of property in its hands; but the conferring of such power is an exercise by the legislature of a public and governmental power which cannot be imparted in perpetuity, and is always subject to revocation, modification and control, and is not the subject of contract.

THE case is stated in the opinion of the court.

*Mr. John S. Voorhees* for plaintiff in error.

*Mr. Robert Adrian* for defendant in error.

*Mr. Frederick Weigel* filed a brief for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of New Jersey. The case arose on a writ of *certiorari* issued by that court at the instance of the mayor and common council of the city of New Brunswick, to review an assessment for taxation made by the township of North Brunswick, and a levy made by the collector of that township, against a farm known as the "poor farm," and personal property thereon, situated in the township of North Brunswick, and owned by the mayor and common council of the city of New Brunswick. The case arose on the following facts, which were agreed upon by the counsel for the respective parties:

By a special act of the legislature of New Jersey, approved February 28, 1860, (Laws of 1860, c. 67, p. 162,) parts of the townships of North Brunswick and Monroe, in the county of Middlesex were set off and established as a separate township, to be called East Brunswick, and part of the township of North Brunswick was set off and established as a separate township, to be called the township of New Brunswick, and the township committees of the said townships of North Brunswick, East Brunswick and New Brunswick were author-

ized and required to divide the real and personal property of the township of North Brunswick between said townships.

The poor farm of the original township of North Brunswick was situated within the limits of what remained of the township of North Brunswick, after the setting off of the townships of East Brunswick and New Brunswick as aforesaid.

By a special act of the legislature, approved March 15, 1861, (Laws of 1861, c. 170, p. 507,) the said township of New Brunswick and the city of New Brunswick were declared to be one corporate body under the name of "The Corporation of the City of New Brunswick," and the said corporation was made subject to all the liabilities of the inhabitants of the township of New Brunswick.

The poor farm and the personal property thereon were never divided between the townships of North Brunswick and East Brunswick and the corporation of the city of New Brunswick, but the townships agreed to sell and convey their interests in the same to said corporation.

By a special act of the legislature, approved February 18, 1862, (Laws of 1862, c. 37, p. 52,) the township committees of North Brunswick and East Brunswick were authorized to convey all the interests of the said townships in said farm and the personal property thereon to the said corporation; and it was thereby further enacted that the said poor farm and the personal property thereon should be at all times thereafter liable and subject to taxation by the township of North Brunswick so long as it should be embraced in the limits of said township.

By virtue of the authority thereby given, the township committees of said townships sold and conveyed said farm and the personal property thereon to said corporation by deed of conveyance bearing date March 27, 1862.

The said corporation of the city of New Brunswick entered into possession of said farm and the personal property thereon under the contract expressed in said deed of conveyance, and is still in possession of the same, and the said farm is still within the limits of the township of North Brunswick.

The said farm and property have been duly assessed by the

township of North Brunswick each year since said sale and conveyance, and the taxes so assessed have been paid by the corporation of the city of New Brunswick to the township of North Brunswick up to and including the year 1877, when further payments were refused on the ground that said poor farm was used exclusively for charitable purposes, and therefore was not liable to taxation.

This *certiorari* brings up the assessment for the year 1878, for the purpose of determining whether said farm and personal property thereon are liable and subject to taxation by said township of North Brunswick.

The deed of March 27, 1862, which contains a copy of the act approved February 18, 1862, is set forth in the margin.[1]

---

[1] Deed from James C. Edmonds, William Dunham, Abm. L. Van Liew, Ellsworth Farmer and James H. Webb, township committee of the township of North Brunswick, and John Griggs, John Culver, Charles P. Blew and Joseph H. Bloodgood, township committee of the township of East Brunswick, to the corporation of the city of New Brunswick.

This indenture, made this 27th day of March, in the year of our Lord one thousand eight hundred and sixty-two, between James C. Edmonds, William Dunham, Abraham L. Van Liew, Ellsworth Farmer and James H. Webb, township committee of the township of North Brunswick, John Griggs, John Culver, Charles P. Blew and Joseph H. Bloodgood, a majority of the township committee of the township of East Brunswick, in the county of Middlesex and State of New Jersey, of the first part, and the corporation of the city of New Brunswick, in the State of New Jersey, of the second part witnesseth: That the said party of the first part, for and in consideration of the sum of two thousand six hundred and eleven dollars and thirteen cents, lawful money of the United States of America, to them, the said party of the first part, in hand well and truly paid by the said party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the said party of the first part, being fully satisfied, contented and paid, have granted, bargained and sold, and by these presents do grant, bargain, sell, convey and confirm, to the said party of the second part and to their successors and assigns forever, all that certain farm and tract of land and premises known as the poor farm, situate, lying and being in the township of North Brunswick, in the county of Middlesex and State of New Jersey, 'butted and bounded as follows: Beginning at the southeasterly corner of a lot of land of Thomas Van Deursen on George's road, thence running along said Van Deursen's line north seventy-one degrees and twenty-five minutes west twenty-three chains to another corner of said Van Deursen's land; thence along his land north

Opinion of the Court.

It was agreed between the attorney for the plaintiff in the *certiorari* and the attorney for the defendant, that the sole

eighteen degrees and twenty-five minutes east five chains and ten links to Mill lane; thence along Mill lane north seventy-one degrees and thirty minutes west ten chains and fifteen links; thence still along Mill lane north sixty-two degrees thirty minutes west two chains and sixty links to a corner of land formerly of David Freeman; thence along the line of said land south forty-four degrees twenty-five minutes west thirty chains and twenty-five links; thence south sixty-two degrees and five minutes east thirty-one chains and fifty links to a corner of Belcher's land; thence north forty-four degrees and thirty minutes east ninety-six links to another corner of Belcher's land; thence south along the line of Belcher's land forty-three degrees and thirty minutes east thirty chains to George's road; thence along said road north twenty-six degrees fifteen minutes east three chains and eighty-five links; thence still along said road north three degrees thirty minutes east nine chains; thence still along said road north five degrees east seven chains and sixty-five links; thence still along said road north two degrees thirty minutes west six chains; thence still along said road north fifteen degrees thirty minutes west seven chains thirty-five links; thence still along said road north sixteen degrees east two chains and eight links; thence still along said road north thirty degrees forty-five minutes east six chains and eight links, to the place of beginning; containing one hundred and forty-one acres.

The above described farm and premises are conveyed by the parties of the first part aforesaid by virtue of the power and authority in them vested by the act of the legislature of the State of New Jersey entitled "An act to authorize the township committees of the township of North Brunswick and East Brunswick, in the county of Middlesex, to convey to the corporation of the city of New Brunswick, the poor farm in the township of North Brunswick, together with all the personal property on said farm," passed 18th February, A.D. 1862, a copy of which is hereto annexed and taken as part of this deed:

"An act to authorize the township committees of the township of North Brunswick and East Brunswick, in the county of Middlesex, to convey to the corporation of the city of New Brunswick the poor farm in the township of North Brunswick, together with all the personal property on said farm.

"Whereas, by an act of the legislature, passed February twenty-eighth, Anno Domini one thousand eight hundred and sixty, the then township of North Brunswick was divided into the townships of North Brunswick; East Brunswick and New Brunswick, and the town committees of said townships were authorized and required to divide the real and personal property of the township of North Brunswick between the new townships of North Brunswick, East Brunswick and New Brunswick; and whereas the poor farm, which is situate in the limits of the present township of

question to be discussed in the Supreme Court of New Jersey
was whether the poor farm, situated in the township of North

---

North Brunswick, and which belonged to the former township of North
Brunswick, and the personal property thereon, has never been divided, but
is owned and held in common by the said townships of North Brunswick,
East Brunswick and the corporation of the city of New Brunswick, which
said corporation has, by an act of the legislature, passed March fifteenth,
Anno Domini one thousand eight hundred and sixty-one, succeeded to, and
become invested with, and entitled to, all the rights and property of the
said township of New Brunswick; and whereas such ownership and holding
in common is found inconvenient and injurious; and whereas the said town-
ships of North Brunswick and East Brunswick have agreed with the cor-
poration of the city of New Brunswick to convey and sell to the said
corporation of the city of New Brunswick all their and each of their right,
title, interest and estate in the said poor farm and personal property thereon,
for the sum of two thousand six hundred and eleven dollars and thirteen
cents, the value of the interest of those townships therein — therefore

" 1. BE IT ENACTED *by the Senate and General Assembly of the State of New
Jersey,* That the township committees of the townships of North Brunswick
and East Brunswick, or a majority of each of the said town committees, be
and they are hereby authorized and empowered to convey all the right, title,
interest and estate of the said townships in the said poor farm and the
personal property thereon, to the said corporation of the city of New
Brunswick, for the sum aforesaid.

" 2. *And be it enacted,* That the said poor farm and the personal property
thereon shall be at all times hereafter liable and subject to taxation by the
said township of North Brunswick so long as it is embraced in the limits of
the said township of North Brunswick.

" 3. *And be it enacted,* That any person sent from the corporation of the
city of New Brunswick, or township of East Brunswick, to the said poor
farm, or any person born upon the said poor farm, shall not, by reason of
any residence or being born on said farm, acquire a residence or settlement
in the said township of North Brunswick, the place of settlement of any
person sent as aforesaid to the said poor farm, or born thereon, shall be
determined in all cases without reference to their residence or being born
on said poor farm.

" 4. *And be it enacted,* That this act shall take effect immediately."

Together with all and singular the buildings, improvements, rights, lib-
erties, privileges, hereditaments and appurtenances to the same belonging
or in any wise appertaining, and the reversion and reversions, remainder
and remainders, rents, issues, and profits thereof, and every part and parcel
thereof; and also all the estate, right, title, interest, use, possession, prop-
erty, claim and demand whatsoever, both in law and equity, of aforesaid
townships of North Brunswick and East Brunswick, to the said premises,
and to every part and parcel thereof; to have and to hold the same to the

Brunswick, and owned by the city of New Brunswick, was exempt from taxation; and that the poor farm referred to, the buildings thereon and the furniture and fixtures therein, were used exclusively for charitable purposes by the city of New Brunswick, the owner thereof.

The questions considered by the Supreme Court of New Jersey were (1) whether the 2d section of the act approved February 18, 1862, was repealed by the general tax law of the State, approved April, 11, 1866, (Revised Laws 1150,) the 5th section of which enacted that the property of the cities of the State, and all buildings used exclusively for charitable purposes, with the land whereon the same are erected and which may be necessary for the fair enjoyment thereof, and the furniture and personal property used therein, shall be exempt from taxation; and the 32d section of which, after repealing certain acts named, repealed all other acts or parts of acts, whether special or local or otherwise, inconsistent with the provisions of the act of 1866, except one act approved in 1864 and such special or local acts as had been approved since 1862; (2) whether, if the legislature had, by the act of April 11, 1866, declared its purpose to repeal the 2d section of the act of February 18, 1862, such purpose could be constitutionally enforced.

The Supreme Court held 15 Vroom, (44 N. J. Law,) 165, (1) that the declaration in the general law of 1866 that all acts and parts of acts, whether special or local or otherwise, inconsistent with its provisions, were repealed, abrogated the provisions in the prior special act of 1862 for the taxation of the poor farm and the personal property thereon by the township of North Brunswick, because such provision in the act of 1862 was inconsistent with the provision in the act of 1866 exempting from taxation all property of the cities of the State and all property used exclusively for charitable purposes; (2) that the legislature could constitutionally repeal the power of taxing

---

said party of the second part, their successors and assigns, to the use of the party of the second part, their successors and assigns.

In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

the poor farm and the personal property thereon, given by the
act of 1862 to the township of North Brunswick.   The court
decided that the provisions of the two statutes could not stand
together, and that it was impossible to give full effect to the
language of the repealing provision of the act of 1866 and keep
in operation the second section of the act of 1862.    It also
decided that the provision of the second section of the act of
1862 did not become, by reason of the subsequent conveyance
of March 27, 1862, to the corporation of the city of New
Brunswick, a contract between that corporation and the town-
ship of North Brunswick, the obligation of which the legisla-
ture was forbidden to impair; that one legislature could not
confer upon a township a power of taxation which a subsequent
legislature could not revoke against the objection of the town-
ship; that the power of a legislature over a corporation created
for the purposes of local government was supreme; that no
contract with such a corporation arose from the delegation to
it of taxing authority, citing *Tinsman* v. *Belvedere Del. Rail-
road,* 2 Dutcher (26 N. J. Law), 148; *Mayor* v. *Jersey City & 
Bergen Railroad,* 5 C. E. Green (20 N. J. Eq.), 360; and
*Rader* v. *Southeasterly Road Dist.,* 7 Vroom (36 N. J. Law),
273; and that the power of taxation was not in any sense the
private property of the municipality, but was peculiarly a pub-
lic and governmental power, and must, as such, be at all times
susceptible of repeal or modification, according to legislative
discretion, so far as the mere right of the township to exercise
it was concerned.

The judgment of the Supreme Court was that the assess-
ment of taxes should be set aside.   The collector of the town-
ship removed the case, by a writ of error, to the Court of
Errors and Appeals of the State, which affirmed the judg-
ment, in an opinion 17 Vroom, (46 N. J. Law,) 204, adopting
the reasons given by the Supreme Court.   The case having
been remitted to the Supreme Court, the collector has brought
it here by a writ of error to that court.

On the question as to the effect of the act of 1866, in repeal-
ing the 2d section of the act of 1862, we concur with the
highest court of New Jersey, that the provisions of the two

statutes cannot stand together, and that it is impossible to give full effect to the language of the repealing provision of the act of 1866, and keep in operation the 2d section of the act of 1862. We must therefore hold, as the state court held, that the 2d section of the act of 1862 was repealed by the act of 1866. This leaves open only the consideration of the question as to whether the 2d section of the act of 1862 created a contract, the obligation of which could not be constitutionally impaired by the repeal of such 2d section.

It is contended for the collector, that the tax provided for by the 2d section of the act of 1862 is in the nature of a ground-rent, and of a right reserved by the township of North Brunswick, out of the land conveyed by the deed of March, 1862; that the fee of the poor farm belonged to the township in its private and proprietary character; that the farm had been acquired by the taxation of the inhabitants of the township; that the legislature could not deprive them of it without their consent; that the township was authorized by the legislature to convey the farm to the corporation of the city of New Brunswick for the consideration, in part, of the right of the township of North Brunswick to tax it so long as it should be embraced in the limits of that township; that, in taking the title, the city of New Brunswick agreed to pay to that township an annual sum to be determined in amount by the annual tax-rate of that township, so long as the farm should remain under, and receive the benefit of, the municipal government of that township; that the right thus reserved, of levying and collecting such tax, became thereby vested in that township, and the amount of tax, when determined, became its private property; and that the case involves the question of the authority of the legislature over the private property and vested rights of the township, and not the question of its authority over the public and governmental powers of the township.

We concur in the views of the Court of Errors and Appeals of New Jersey on this question. It is not the same question as that involved in the principle recognized by this court, that a provision in an act of a legislature, exempting certain speci-

fied property from taxation by the authorities of a State or a municipality, for all time or for a limited time, constitutes a contract in respect of such property, the obligation of which cannot be impaired by a subsequent legislature, and is, therefore, a contract within the protection of the Constitution of the United States.

It is to be observed in the present case, that the act of February 18, 1862, does not assert or recognize the fact that the privilege of taxing the poor farm in the future was a part of the consideration for the conveyance of that farm by the to wn ship of North Brunswick. The act recites that the townships of North Brunswick and East Brunswick had agreed to convey and sell to the corporation of the city of New Brunswick their interest in the poor farm and the personal property thereon, for the sum of $2611.13, "the value of the interest of those townships therein." It then empowers the two townships to convey their interest in the poor-farm and the personal property thereon to the corporation of the city of New Brunswick "for the sum aforesaid." It then enacts, in the 2d section, which is a separate and independent section, "that the said poor farm and the personal property thereon shall be at all times hereafter liable and subject to taxation by the said township of North Brunswick so long as it is embraced in the limits of the said township of North Brunswick."

So, also, the deed of March 27, 1862, recites as its consideration the sum of $2611.13, paid by the corporation of the city of New Brunswick to the grantors. No other consideration is expressed. The act of February 18, 1862, is incorporated in the deed, as the authority by virtue of which the grantors convey the property.

It is not intended to suggest that, if the right of taxation had been named in the act or in the deed as a part of the consideration for the conveyance, it would have made a different case; but reference is made to the actual provisions of the act and the deed solely for the purpose of showing that they evince no idea on the part of the legislature, or of the parties to the conveyance, that the perpetual right of taxation, now asserted, formed any part of the consideration of the transaction.

The true principle involved in the case is, whether the power of taxation on the part of a municipal corporation is private property, or a vested right of property, in its hands, which, when once conferred upon it by an act of the legislature, cannot be subsequently modified or repealed. Even without the special provision of the 2d section of the act of February 18, 1862, it is to be presumed that the poor farm and the personal property thereon would, while situated in the township of North Brunswick, be subject to taxation by that township unless exempted from such taxation on the ground of a charitable use. The special question in this case arises, therefore, solely out of the use of the words, in the 2d section, "at all times hereafter." The provision of the 2d section, and the contention here made on the part of the collector, necessarily imply the authority of the legislature to confer the power of taxation upon the township, and the non-existence of such power unless conferred by the legislature. The question arising is, therefore, whether the legislature which passed the act of February 18, 1862, could lawfully so grant the power of taxation to the township in perpetuity, that a subsequent legislature could not repeal or modify such grant of power.

We are clearly of opinion that such a grant of the power of taxation, by the legislature of a State, does not form such a contract between the State and the township as is within the protection of the provision of the Constitution of the United States which forbids the passage by a State of a law impairing the obligation of contracts. The conferring of such right of taxation is an exercise by the legislature of a public and governmental power. It is the imparting to the township of a portion of the power belonging to the State, which it can lawfully impart to a subordinate municipal corporation. But, from the very character of the power, it cannot be imparted in perpetuity, and is always subject to revocation, modification and control by the legislative authority of the State. The authorities to this effect are uniform. 1 Dillon on Mun. Corp. 3d ed. §§ 61, 63, and cases there cited; Cooley on Const. Lim. 3d ed. *192, *193, *237, and cases there cited: *East Hartford v. Hartford Bridge Co.*, 10 How. 511, 534; *State Bank* v.

*Knoop*, 16 How. 369, 380; *United States* v. *Railroad Co.*, 17 Wall. 322, 329; *Philadelphia* v. *Fox*, 64 Penn. St. 169; *Mayor* v. *Jersey City & Bergen Railroad*, 5 C. E. Green (20 N. J. Eq.), 360; *Police Jury* v. *Shreveport*, 5 La. Ann. 661, 665; *State* v. *St. Louis County Court*, 34 Missouri, 546, 552; *People* v. *Morris*, 13 Wend. 325, 331; *Warner* v. *Beers*, 23 Wend. 103, 126; *City of Richmond* v. *Richmond & Danville Railroad*, 21 Grattan, 604, 613; *County of Richland* v. *County of Lawrence*, 12 Illinois, 8; *Trustees of Schools* v. *Tatman*, 13 Illinois, 27, 30; *Gutzweller* v. *People*, 14 Illinois, 142; *Sangamon County* v. *City of Springfield*, 63 Illinois, 66, 71.

In the present case the 2d section of the act of February 18, 1862, has no more force than if the words "at all times hereafter" had been omitted; and the section is to be construed as if it only temporarily conferred the right of taxation on the township, subject to be recalled at the pleasure of the legislature. There is no element of private property in the right of taxation conferred upon a municipal corporation. Property acquired by paying for it with money raised by taxation is property. The legislation in question does not affect or interfere with any such property. The poor farm and the personal property thereon are not the property of the township of North Brunswick, but are the property of the corporation of the city of New Brunswick. Nor is there anything violative of any provision of the Constitution of the United States in the enactment of the legislature of New Jersey, that the property in question shall be exempt from taxation because it is used exclusively for charitable purposes. The long recognized and universally prevalent policy of making such exemption is a warrant for saying that the 2d section of the act of February 18, 1862, is fairly to be regarded as containing an implied reservation that such exemption might be thereafter made, as being the exercise of a public and governmental power, resting wholly in the discretion of the legislature, and not the subject of contract.

*Judgment affirmed.*