BLACK RIVER REGULATING DISTRICT et al., Respondents, *v.*
ADIRONDACK LEAGUE CLUB, Appellant.

Argued February 26, 1954; decided July 14, 1954.

*Charles H. Tuttle, Warnick J. Kernan, John R. Brook* and *Sanford D. Stockton, Jr.,* for appellant. I. An affirmative answer should be given to the *first* certified question. (*Matter of Flushing Hosp. & Dispensary,* 288 N. Y. 735; *Brady* v. *Blackett-Sample-Hummert,* 285 N. Y. 540.) II. An affirmative answer should also be given to the *second* certified question. (*Boardwalk & Seashore Corp.* v. *Murdock,* 286 N. Y. 494; *Quaker Oats Co.* v. *City of New York,* 295 N. Y. 527; *Gilpin* v. *Mutual Life Ins. Co. of N. Y.,* 299 N. Y. 253; *Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419.) III. Rule 113 was applicable and presented the validity of the Stokes Act as a question of law. (*Chance* v. *Guaranty Trust Co. of N. Y.,* 173 Misc. 754, 257 App. Div. 1006, 282 N. Y. 656.) IV. The constitutionality of the Stokes Act is upheld as a matter of law by section 1 of article III of the State Constitution. (*Matter of Fink* v. *Cole,* 302 N. Y.

216; *Association for Protection of Adirondacks* v. *MacDonald,* 253 N. Y. 234.) V. The constitutionality of the Stokes Act is also upheld as a matter of law by section 3 of article V of the State Constitution. VI. The constitutionality of the Stokes Act is also upheld as a matter of law by section 1 of article X of the State Constitution. (*Beloff* v. *Consolidated Edison Co.,* 300 N. Y. 11; *People ex rel. Clauson* v. *Newburgh & Shawangunk Plank Road Co.,* 86 N. Y. 1; *Matter of Wallace,* 71 App. Div. 284.) VII. The constitutionality of the Stokes Act is also upheld as a matter of law by section 3 of article XIV of the State Constitution. (*People* v. *Adirondack Ry. Co.,* 160 N. Y. 225, 176 U. S. 335; *People* v. *System Properties,* 281 App. Div. 433.) VIII. The constitutionality of the Stokes Act is also upheld as a matter of law by section 2 of article XIV of the State Constitution. The constitutionality of the Stokes Act is also upheld as a matter of law by section 1 of article XIV of the State Constitution. IX. In no sense was the Stokes Act a local law; and, even if it were, it would violate no constitutional restriction. (*People ex rel. Clauson* v. *Newburgh & Shawangunk Plank Road Co.,* 86 N. Y. 1; *Ferguson* v. *Ross,* 126 N. Y. 459; *Robertson* v. *Zimmermann,* 268 N. Y. 52; *Adler* v. *Deegan,* 251 N. Y. 467; *Buchanan* v. *Town of Salina,* 270 App. Div. 207; *Matter of Wallace,* 71 App. Div. 284.) X. The mere fact that, before its final determination, the board incurred " preliminary " expenses, defrayed by the issue of conditional certificates of indebtedness, for preliminary surveys and paper work, in no way empowers the board to use the courts to force specific performance of its subsequent formulation and determination upon the State and the defendant in the teeth of the Stokes Act. (*People* v. *Adirondack Ry. Co.,* 160 N. Y. 225; *Keefe* v. *Clark,* 322 U. S. 393; *Ramapo Water Co.* v. *New York,* 236 U. S. 579; *Underground R. R.* v. *City of New York,* 193 U. S. 416; *Ramapo Mountains Water, Power & Service Co.* v. *Commissioners of Palisades Interstate Park,* 177 App. Div. 700; *Trenton* v. *New Jersey,* 262 U. S. 182; *Risty* v. *Chicago, R. I. & P. Ry. Co.,* 270 U. S. 378; *Darlington* v. *Mayor of City of N. Y.,* 31 N. Y. 164; *Robertson* v. *Zimmermann,* 268 N. Y. 52; *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Matter of Matson,* 293 N. Y. 476; *Shepherd* v. *Mount Vernon Trust Co.,* 269 N. Y. 234; *Matter of People (Tit. & Mtge. Guar. Co.),* 264 N. Y. 69; *Norman*

v. *Baltimore & O. R. Co.,* 294 U. S. 240; *Hudson Water Co.* v. *McCarter,* 209 U. S. 349; *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548; *Union Dry Goods Co.* v. *Georgia P. S. Corp.,* 248 U. S. 372; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398.) XI. The Appellate Division's assumption that, merely because the board has outstanding some $200,000 in renewals of certificates, the courts must force, as against the Legislature and the Governor, the board's claim to proceed with this enormous construction and invasion of the Adirondack State Park at a 1947 estimated cost of $6,000,000, is wholly untenable. (*Lord* v. *Thomas,* 64 N. Y. 107; *People ex rel. Ryan* v. *Aldridge,* 83 Hun 279; *Caldwell* v. *Donaghey,* 108 Ark. 60; *Hays* v. *Port of Seattle,* 251 U. S. 233; *Brown* v. *Colorado,* 106 U. S. 95; *Burns & McDonnell Engineering Co.* v. *Iowa City,* 225 Iowa 1241; *Gray* v. *City of Joliet,* 287 Ill. 280; *Markman* v. *Calumet City,* 297 Ill. App. 531; *Vail* v. *City of Paris,* 344 Ill. App. 590.) XII. Even if repayment of the outstanding certificates were now to be considered, the board has remedies, although not by the present action. (*Ausable Chasm Co.* v. *State of New York,* 266 N. Y. 326; *Williamsburgh Sav. Bank* v. *State of New York,* 243 N. Y. 231; *Farrington* v. *State of New York,* 248 N. Y. 112; *Guthrie Nat. Bank* v. *Guthrie,* 173 U. S. 528.) XIII. The individual plaintiffs have no legal capacity to test the constitutionality of the Stokes Act. (*Bull* v. *Stichman,* 273 App. Div. 311, 298 N. Y. 516; *County of Albany* v. *Hooker,* 204 N. Y. 1; *Trenton* v. *New Jersey,* 262 U. S. 182; *Newark* v. *New Jersey,* 262 U. S. 192; *Sweeney* v. *State of New York,* 251 N. Y. 417.) XIV. An affirmative answer should also be given to the *fifth* certified question: " Was the Supreme Court, as a matter of law, without jurisdiction over the subject matter of this action in that the State of New York is not, has not been, and has not consented to become, a party to the action? " (*Manhattan Stor. & Warehouse Co.* v. *Movers & Warehousemen's Assn.,* 289 N. Y. 82; *Wood* v. *City of Salamanca,* 289 N. Y. 279; *Somberg* v. *Somberg,* 263 N. Y. 1; *Bach* v. *Grabfelder,* 233 App. Div. 773; *Public Serv. Comm.* v. *Wycoff Co.,* 344 U. S. 237; *James* v. *Alderton Dock Yards,* 256 N. Y. 298.) XV. An affirmative answer should also be given to the *sixth* certified question: " Is the State of New York a necessary and indispensable party to this action, as a matter of law? " (*Metropolitan Trust Co.* v.

*Tax Comrs.*, 220 N. Y. 344; *Niagara Falls Power Co. v. White,* 292 N. Y. 472; *Sanders* v. *Saxton,* 182 N. Y. 477.) XVI. An affirmative answer should also be given to the *seventh* certified question: " Is the plaintiff District and Board without power, as a matter of law, to sue in this action by a private attorney for a declaratory judgment that Chapter 803 of the Laws of 1950 is unconstitutional? " XVII. The law of this case is now dominated by the constitutional amendment which took effect January 1, 1954. The purpose and consequence of the amendment were to revoke any authority to use the lands of the State, constituting the Forest Preserve, for the construction and maintenance of further reservoirs " to regulate the flow of streams ". XVIII. This court is required to direct judgment in accordance with the law of this case as established by the constitutional amendment. (*Bradford* v. *County of Suffolk,* 283 N. Y. 503; *Matter of Kahn* [*Nat. City Bank*], 284 N. Y. 515; *Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Duplex Co.* v. *Deering,* 254 U. S. 443; *American Steel Foundries* v. *Tri-City,* 257 U. S. 184; *Texas Co.* v. *Brown,* 258 U. S. 466.)

*Nathaniel L. Goldstein, Attorney-General* (*Edward L. Ryan* and *Wendell P. Brown* of counsel), appearing under section 71 of the Executive Law. I. The Stokes Act does not violate either the Federal or State Constitutions. (*Board of Black Riv. Regulating Dist.* v. *Ogsbury,* 203 App. Div. 43, 235 N. Y. 600; *Board of Hudson Riv. Regulating Dist.* v. *Fonda, Johnstown & Gloversville R. R. Co.,* 249 N. Y. 445; *Matter of Adirondack League Club* v. *Black Riv. Regulating Dist.,* 275 App. Div. 618, 301 N. Y. 219; *Hunter* v. *City of Pittsburgh,* 207 U. S. 161; *Trenton* v. *New Jersey,* 262 U. S. 182; *Faitoute Co.* v. *Asbury Park,* 316 U. S. 502; *Williams* v. *Mayor,* 289 U. S. 36; *Pawhuska* v. *Pawhuska Oil Co.,* 250 U. S. 394; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79; *Essex Public Road Bd.* v. *Skinkle,* 140 U. S. 334; *Brooklyn & Richmond Ferry Co.* v. *United States,* 167 F. 2d 330; *People* v. *Morris,* 13 Wend. 325; *Crenshaw* v. *United States,* 134 U. S. 99; *Williamson* v. *New Jersey,* 130 U. S. 189.) II. Plaintiffs have no standing in law to question the constitutionality of the Stokes Act. (*Sweeney* v. *State of New York,* 251 N. Y. 417; *Williams* v. *Mayor,* 289 U. S. 36; *Newark* v. *New Jersey,* 262 U. S. 192; *County of Albany* v. *Hooker,* 204 N. Y. 1;

*Matter of Bd. of Educ. of Bethlehem Union Free School Dist. No. 1* v. *Wilson,* 303 N. Y. 107; *People ex rel. Durham Realty Corp,* v. *La Fetra,* 230 N. Y. 429; *Norman* v. *Baltimore & Ohio R. Co.,* 294 U. S. 240.) III. Plaintiffs, as individuals, have no legal capacity to test the constitutionality of the act. (*Bull* v. *Stichman,* 273 App. Div. 311, 298 N. Y. 516.)

*Milo R. Kniffen* for Adirondack Moose River Committee, Inc., and others, *amici curiæ,* in support of appellant's position. I. An affirmative answer should be given to the seven certified questions submitted herein by reason of the fact that the decision of the Court of Appeals (301 N. Y. 219), is decisive of this litigation. (*Wilmerding* v. *O'Dwyer,* 297 N. Y. 664; *Matter of Flushing Hosp. & Dispensary,* 288 N. Y. 735.) II. An affirmative answer should be given by this court to the seven certified questions submitted herein by reason of the fact that the Stokes Act (L. 1950, ch. 803) is constitutional and effectively prohibits the construction of Panther Dam and is decisive of this litigation. (*Darweger* v. *Staats,* 267 N. Y. 290; *Stanton* v. *Board of Supervisors of Co. of Essex,* 191 N. Y. 428; *People ex rel. Clauson* v. *Newburgh & Shawangunk Plank Road Co.,* 86 N. Y. 1; *Ferguson* v. *Ross,* 126 N. Y. 459; *Adler* v. *Deegan,* 251 N. Y. 467; *Association for Protection of Adirondacks* v. *MacDonald,* 253 N. Y. 234.) III. No plaintiff herein has any standnig or authority to question or attack the act of the Legislature. (*Robertson* v. *Zimmermann,* 268 N. Y. 52; *Hunter* v. *Pittsburgh,* 207 U. S. 161; *Darlington* v. *Mayor of City of N. Y.,* 31 N. Y. 164; *Trenton* v. *New Jersey,* 262 U. S. 182; *Risty* v. *Chicago, R. I. & P. Ry. Co.,* 270 U. S. 378; *Pawhuska* v. *Pawhuska Oil Co.,* 250 U. S. 394; *Lynch* v. *United States,* 292 U. S. 571; *County of Albany* v. *Hooker,* 204 N. Y. 1.) IV. It is fallacious for respondent to seek to limit the questions certified to this court by the Appellate Division. V. This court should direct the making of a final order in accordance with the constitutional amendment which became effective January 1, 1954. (*Bradford* v. *County of Suffolk,* 283 N. Y. 503; *Matter of Kahn* (*Nat. City Bank*), 284 N. Y. 515; *Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419.)

*Daniel Scanlon* and *Russell Wright* for respondents. I. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in

legal contemplation as inoperative as though it had never been passed. (*Norton* v. *Shelby Co.,* 118 U. S. 425; *Poindexter* v. *Greenhow,* 114 U. S. 270; *Van Antwerp* v. *State of New York,* 218 N. Y. 422; *People ex rel. Farrington* v. *Mensching,* 187 N. Y. 8; *Chenango Bridge Co.* v. *Paige,* 83 N. Y. 178; *Atkins* v. *Hertz Drivurself Stations,* 261 N. Y. 352; *Borden's Co.* v. *Baldwin,* 293 U. S. 194.) II. The constitutional questions here involved should not be decided on a motion addressed to the pleadings. (*Rockland Light & Power Co.* v. *City of New York,* 289 N. Y. 45; *Board of Black Riv. Regulating Dist.* v. *Ogsbury,* 235 N. Y. 600; *Weiskopf* v. *City of Saratoga Springs,* 269 N. Y. 634; *Denihan Enterprises* v. *O'Dwyer,* 302 N. Y. 451; *City Ry. Co.* v. *Citizens' R. R. Co.,* 166 U. S. 557.) III. The complaint and supplement sufficiently allege facts showing the invalidity of the Stokes Act under the Federal and State Constitutions. (*Fletcher* v. *Peck,* 6 Cranch [U. S.] 87; *Georgia R. R. Co.* v. *Redwine,* 342 U. S. 299; *Louisiana* v. *Pilsbury,* 105 U. S. 278; *Russell* v. *Sebastian,* 233 U. S. 195; *Grand Trunk Western Ry.* v. *South Bend,* 227 U. S. 544; *Houston & Texas Central Ry.* v. *Texas,* 170 U. S. 243.) IV. Respondents' regulating board and regulating district are more than a mere agent of the State. (*Board of Black Riv. Regulating Dist.* v. *Ogsbury,* 203 App. Div. 43, 235 N. Y. 600; *Matter of Adirondack League Club* v. *Board of Black Riv. Regulating Dist.,* 275 App. Div. 618; *Board of Hudson Riv. Regulating Dist.* v. *Fonda, Johnstown & Gloversville R. R. Co.,* 249 N. Y. 445.) V. Black River Board and District have an interest in the continuing life and health of the whole project, a system of reservoirs, of which Panther Mountain Reservoir is " an integral part.'' So, too, have the holders of the certificates of indebtedness of the district. (*New York Trap Rock Corp.* v. *Town of Clarkstown,* 299 N. Y. 77.) VI. The amendment to the State Constitution, effective January 1, 1954, cannot be applied to bar completion of Panther Mountain Reservoir long previously authorized and under way. It is subject to the same constitutional infirmities as the Stokes Act. (*Russell* v. *Sebastian,* 233 U. S. 195; *New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 650; *Lincoln Union* v. *Northwestern Co.,* 335 U. S. 525; *County of Callaway* v. *Foster,* 93 U. S. 567; *Louisiana* v. *Pilsbury,* 105 U. S. 278; *Town of Cherry Creek* v. *Becker,* 123 N. Y. 161.) VII. The constitutional amendment effective January 1, 1954,

does not render erroneous the decision of the Appellate Division below. (*Matter of Reynolds*, 202 N. Y. 430; *People* v. *Miller*, 304 N. Y. 105.) VIII. Section 2 of article XIV of the Constitution limited the Legislature to make provisions " by general laws " for use of State-owned Forest Preserve lands within the 3% limitation. The Stokes Act is not a general law within this limitation. (*Matter of Kuhn* v. *Curran*, 294 N. Y. 207; *Stapelton* v. *Pinckney*, 293 N. Y. 330; *People ex rel. Burby* v. *Howland*, 155 N. Y. 270; *People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50; *People ex rel. Reynolds* v. *Common Council of City of Buffalo*, 140 N. Y. 300; *People* v. *O'Brien*, 111 N. Y. 1.) IX. Appellant cannot justify this legislative vivisection under the theory of reserved power to amend corporate charters. No more can appellant justify the Stokes Act as the withdrawal of powers previously given to a municipal corporation. (*Breslav* v. *New York & Queens Elec. Light & Power Co.*, 249 App. Div. 181, 273 N. Y. 593; *Matter of Mount Sinai Hosp.*, 250 N. Y. 103; *Lord* v. *Equitable Life Assur. Soc.*, 194 N. Y. 212; *Owensboro* v. *Cumberland Tel. Co.*, 230 U. S. 58; *Coombes* v. *Getz*, 285 U. S. 434; *Mobile* v. *Watson*, 116 U. S. 289; *Town of Cherry Creek* v. *Becker*, 123 N. Y. 161.)

DYE, J. In this appeal we deal with the enforcibility of a proposed plan to construct Panther Mountain reservoir and dam on the south branch of the Moose River, a tributary of the Black River in Herkimer County, for the purpose of regulating the flow of the Black River and its tributaries.*

The controversy turns on the applicability of the Stokes Act, so-called, which prohibits the construction of " reservoirs for the regulation of the flow of streams or for any other purpose *except for* municipal water supply  *  *  *  in Hamilton or Herkimer counties on the south branch of the Moose river by any river regulating board." (L. 1950, ch. 803, eff.

---

* Note: According to the pleadings the proposed plan was approved by the Conservation Commission, April 30, 1920, and embraced among other properties the enlargement of the Stillwater Reservoir on Beaver River completed in 1923, an integral part of which was the Panther Mountain regulating reservoir. In furtherance of such plan the board made extensive investigations, surveys, maps, plans and studies including engineering and legal costs and other necessary preliminaries for its construction in accordance with law, all of which were approved after the required public hearing, and the final order filed in each of the required County Clerk's offices on or about November 23, 1948.

April 20, 1950, amdg. Conservation Law, § 445, as added by L. 1915, ch. 662.)

Prior to such amendment the State Constitution as it then read, declared "lands of the state * * * constituting the forest preserve * * * shall be forever kept as wild forest lands" subject however to the exception that the Legislature could provide "for the use of not exceeding three per centum of such lands for the construction and maintenance of reservoirs * * * to regulate the flow of streams" (N. Y. Const., art. XIV, §§ 1, 2).

At the general election held in November, 1953, this exception was cancelled and withdrawn by the adoption of the Ostrander Amendment, so-called, which, according to the official phrasing prepared by the Secretary of State for the voting machines and ballots was intended "to prohibit the use of portions of the forest preserve for the construction of reservoirs to regulate the flow of streams". In adopting that amendment the People of the State have rendered the lands of the State Forest Preserve inviolate for use in regulating the flow of streams.

When the parties to this litigation were previously before us, the board asked us to review the correctness of the decision in the Appellate Division (to the effect that the reservoirs and dam should be built according to plan "to the same extent that it would have done if the Stokes Act had not been passed".) We ruled that "Since the reservoir planned by the Board * * * was concededly not ' for municipal water supply ' and since no construction had actually been commenced, the action on the part of the Legislature [that is, enactment of the Stokes Act] effectively and completely disposed of the Board's plan." We reversed the order of the Appellate Division and remitted the matter to Special Term "with directions to dismiss the petitions solely upon the ground that the issues are moot". We thus did not reach the merits (*Wilmerding* v. *O'Dwyer,* 297 N. Y. 664) nor did we deem it a situation requiring special treatment (*Matter of Rosenbluth* v. *Finkelstein,* 300 N. Y. 402; *Matter of Glenram Wine & Liq. Corp.* v. *O'Connell,* 295 N. Y. 336). At the same time we declined to pass upon the constitutionality of the Stokes Act as such question was not then before us (*Matter of Adirondack League Club* v. *Board*

*of Black Riv. Regulating Dist.,* 301 N. Y. 219, revg. 275 App. Div. 618). Shortly thereafter the Black River Regulating District and the individual plaintiffs for themselves and as members of the district board instituted this action for a judgment declaring it entitled to maintain condemnation proceedings** as against the defendant, Adirondack League Club and that the Stokes Act in its application to the Panther Mountain Reservoir project is constitutionally invalid.

The defendant, Adirondack League Club, by its answer, admitted all the facts of record and generally denied all other allegations, pleading in and for an affirmative defense that the construction of the Panther Mountain reservoir was barred by the Stokes Act, the plaintiff's lack of status to challenge its validity and our decision in the prior case. The defendant then challenged the sufficiency of the complaint by motion for judgment on the pleadings (Rules Civ. Prac., rule 112) or, in the alternative, for an order dismissing the complaint and for summary judgment (Rules Civ. Prac., rule 113). The Special Term granted such motion, dismissed the complaint and gave summary judgment in favor of the defendant.

The Appellate Division, although agreeing that the final order of the district board had been rendered inoperative by the decision of this court and had been annulled by implication of law, but since we had not passed on the constitutionality of the Stokes Act, unanimously reversed on the law and the facts the Special Term order dismissing the complaint, holding as a matter of law that if the constitutional invalidity of the act was established, '' the issues which were rendered moot by the passage of the Stokes Act would be no longer moot ''. The Appellate Division also indicated that the plaintiffs had an independent interest (by reason of their liability on the outstanding certificates of indebtedness), separate and apart from their status as an agency of the State, to test the constitutionality of the Stokes Act (*Black River Regulating Dist.* v. *Adirondack League Club,* 282 App. Div. 161).

---

** Note: Approximately 3,500 acres of land belonging to the Adirondack League Club and 1,500 acres of State-owned land — parts of the Forest Preserve — will be needed for the project.

The Appellate Division granted leave to appeal to this court on seven certified questions of law, viz.:

" 1. Did this Court err as a matter of law in reversing the order and judgment of the Special Term?

2. Under Rule 112 of the Rules of Civil Practice was the defendant entitled, as a matter of law, to judgment on the pleadings dismissing the complaint?

3. In the alternative, and under Rule 113 of the Rules of Civil Practice, was the defendant entitled, as a matter of law, to judgment dismissing the complaint?

4. Were the plaintiffs, as a matter of law, without power or standing to question the constitutional power of the State Legislature to adopt the so-called Stokes Act, being Chapter 803 of the laws of 1950?

5. Was the Supreme Court, as a matter of law, without jurisdiction over the subject matter of this action in that the State of New York is not, has not been, and has not consented to become, a party to the action?

6. Is the State of New York a necessary and indispensable party to this action as a matter of law?

7. Is the plaintiff District and Board without power, as a matter of law, to sue in this action by a private attorney for a declaratory judgment that Chapter 803 of the Laws of 1950 *is unconstitutional?* "

At the outset we wish to make it clear that we intend to deal with the issues presented in light of existing law. While the Stokes Act and the Ostrander Amendment were subsequent to the approval of the proposed reservoir project, they nonetheless enunciated a public policy concerning the use of the lands in the State Forest Preserve in order to make sure that such lands shall be " forever kept as wild forest lands ". In such a setting we decide the issue and answer the questions certified in accordance with the law as it exists when our decision is made (*Gallewski* v. *Hentz & Co.*, 301 N. Y. 164, 172; *Boardwalk & Seashore Corp.* v. *Murdock*, 286 N. Y. 494; *Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271), a policy in harmony with Federal authority (*United States* v. *Schooner Peggy*, 1 Cranch [U. S.] 103) and which is consonant with our unwillingness to perpetuate a judgment contrary to existing

law (*Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419; *Matter of Kahn* [*Nat. City Bank*], 284 N. Y. 515; *Bradford* v. *County of Suffolk,* 283 N. Y. 503; *Texas Co.* v. *Brown,* 258 U. S. 466; *Duplex Co.* v. *Deering,* 254 U. S. 443).

The constitutional withdrawal of the board's legislative authority to use lands of the State Forest Preserve " to regulate the flow of streams " is not in any way limited to a prospective effect, nor may its effectiveness be suspended or postponed by the plaintiffs' claim of a so-called vested right to proceed to construction, because of prior approval of its official plan.

That plan, as we have heretofore said, was completely and effectively disposed of by the enactment of the Stokes Act (301 N. Y. 219, 222).

Regulation of the flow of streams by the construction and maintenance of reservoirs is a matter of State concern in the interest of public health, safety and welfare (Conservation Law, art. VII; *Board of Black Riv. Regulating Dist.* v. *Ogsbury,* 203 App. Div. 43, affd. 235 N. Y. 600; *Board of Hudson Riv. Regulating Dist.* v. *Fonda, Johnstown & Gloversville R. R. Co.,* 249 N. Y. 445).

A regulating district charged with authority to carry out the public purpose is an agency of the State depending for its existence and performing its functions subject to the control and direction of the State. The number and nature of its powers are within the State's absolute discretion and any alteration, impairment or destruction of those powers by the Legislature presents no question of constitutionality.

It has long been settled by Federal decisions that such powers are not protected by the due process clause of the Fourteenth Amendment to the Federal Constitution (*Hunter* v. *Pittsburgh,* 207 U. S. 161, 177–179; *Trenton* v. *New Jersey,* 262 U. S. 182; *Barnes* v. *District of Columbia,* 91 U. S. 540; *Faitoute Co.* v. *Asbury Park,* 316 U. S. 502; *Williams* v. *Mayor,* 289 U. S. 36; *Pawhuska* v. *Pawhuska Oil Co.,* 250 U. S. 394, 397–399; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79; *Essex Public Road Bd.* v. *Skinkle,* 140 U. S. 334; *Brooklyn & Richmond Ferry Co.* v. *United States,* 167 F. 2d. 330, 333).

The courts of this State from very early times have consistently applied the Federal rule in holding that political power conferred by the Legislature confers no vested right as against the government itself. It is on the theory that the power conferred by the Legislature is akin to that of a public trust to be exercised not for the benefit or at the will of the trustee but for the common good. How long it shall exist or how it may be modified or altered belongs exclusively to the people to determine (*People* v. *Morris,* 13 Wend. 325, 331–332). The concept of the supreme power of the Legislature over its creatures has been respected and followed in many decisions (*Matter of City of Rochester* v. *Public Service Comm.,* 192 Misc. 33, affd. 275 App. Div. 172, affd. 301 N. Y. 801; *City of New York* v. *Village of Lawrence,* 250 N. Y. 429, 437; *People* v. *Pinckney,* 32 N. Y. 377, 395; *Darlington* v. *City of New York,* 31 N. Y. 164; *Crenshaw* v. *United States,* 134 U. S. 99, 107; *Williamson* v. *New Jersey,* 130 U. S. 189, 200; *Meriwether* v. *Garrett,* 102 U. S. 472, 511; *County of Albany* v. *Hooker,* 204 N. Y. 1).

The contention that the district board is more than an agency of the State because voluntarily formed must be rejected. The district is voluntary in nature only to the extent that a person or public corporation may petition the water power and control commission for its organization (Conservation Law, § 432). However, it is the order of the commission which creates the district (Conservation Law, § 434) for the sole State purpose of constructing reservoirs for river regulation. In fulfilling its purpose, the district exercises only governmental functions in accordance with the mandate of section 2 of article XIV of the State Constitution that the reservoirs shall be constructed, owned, controlled and operated by the State.

The inclusion of Panther Mountain Reservoir in the official plan did not vest in petitioners per se a contractual interest, either in the proposed site or in the construction of a reservoir, which could not be impaired by legislative action. Statutory provisions for public hearings at which objections may be raised (Conservation Law, § 453) and for judicial review of any determination made thereon (Conservation Law, § 454) preclude any concept of necessity or inevitability with respect

to the ultimate construction of the reservoir. Inherent in the grant of legislative power is the plenary power to alter or revoke. The law altering or revoking does not impair any obligation of contract (*Board of Educ. of Dist. No. 6* v. *Board of Educ. of Dist. No. 7*, 76 App. Div. 355, affd. without opinion 179 N. Y. 556). Actually, there is only one party to a contract by which a governmental corporation is formed. Its board of directors are only trustees for the common good (*New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79, *supra*). The interests of the plaintiffs then are only those of the State and the State cannot challenge its own acts (*Sweeney* v. *State of New York*, 251 N. Y. 417).

As we have pointed out, the district board has no special character different from that of the State. Its only purpose is to construct reservoirs and that, concededly, is a State purpose in the interest of public health, safety and welfare (Conservation Law, § 431). Not only as a board, but also as individuals, the plaintiffs are without power to challenge the validity of the act or the Constitution (*Bull* v. *Stichman*, 273 App. Div. 311, affd. 298 N. Y. 516).

The issuance of certificates of indebtedness does not confer upon plaintiffs an independent status by which they have standing, either as a body politic or as individuals, to test the validity of the Stokes Act (*Bull* v. *Stichman*, 273 App. Div. 311, affd. 298 N. Y. 516, *supra*) or to protect the interests of creditors of the district. (*Matter of Board of Educ. of Bethlehem Union Free School Dist. No. 1* v. *Wilson*, 303 N. Y. 107, 115; *Board of Educ. of Dist. No. 6* v. *Board of Educ. of Dist. No. 7,* 76 App. Div. 355, affd. 179 N. Y. 556, *supra*). Whatever contract the certificate holders may have with the district is subject to legitimate governmental power exercised on behalf of the public welfare. (*Norman* v. *Baltimore & O. R. R. Co.*, 294 U. S. 240; *Stephenson* v. *Binford*, 287 U. S. 251; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429; *Board of Educ. of Dist. No. 6* v. *Board of Educ. of Dist. No. 7, supra*.)

The plaintiffs, either as a body politic or as individuals, are effectively barred from maintaining condemnation proceedings and have no standing in law either to challenge the applicability of the Stokes Act or the Ostrander Amendment. Having

reached the conclusion that the Stokes Act is constitutional and that the plaintiffs lack status to challenge its validity, we see no necessity for passing on any other question.

The order of Appellate Division should be reversed, with costs, and the matter remitted for further proceedings in accordance with the opinion herein. The first, third and fourth questions certified are answered in the affirmative. The second, fifth, sixth and seventh questions certified are not answered.

LEWIS, Ch. J., CONWAY, DESMOND, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

Order reversed, etc.