Sydney F. Foster, J.
The above-named matters, formerly actions for declaratory judgments, are to be treated and decided as a proceeding under article 78 of the CPLE, in accordance with an order of the Appellate Division, Second Department, which also directed a transfer of the proceeding to the Supreme Court, Albany County (25 A D 2d 659). The former plaintiffs, who are petitioners now, seek to set aside the determination of the State Commissioner of Education refusing to make an enumeration of the inhabitants of certain school districts.
There is no dispute as to the facts between the parties since all the matters involved are matters of public record. The solution of the controversy depends largely, if not entirely, upon the construction to be placed upon subdivisions 1 and 3 of section 1711 of the Education Law which reads: “ 1. In any union free school district having a population of four thousand five hundred or more, which fact shall be determined by the commissioner of education, as herein provided, the board of education may appoint a superintendent of schools. * * *
“ 3. The board of education of any union free school district may by resolution duly adopted and entered upon its minutes request that an enumeration of the inhabitants of such district be made. The commissioner of education may thereupon cause an enumeration of the inhabitants to be made, the expense of such enumeration as certified by him to be paid by the district *183 in whose interest it is made. The population shown by the last state or federal census or village enumeration for city, village or town may be accepted by said commissioner whenever such citiy, village or town shall be wholly within or coincide with the boundaries of the school district,” (Emphasis supplied.)
The foregoing section is tied in with another section of the Education Law, section 1903, which reads: ‘ ‘ The board of education of a central high school district shall have jurisdiction over the pupils residing therein who have completed the work of the sixth grade and shall have the same powers and duties in respect to the school therein as a board of education of a union free school district has, under this chapter, in respect to the schools in such district. Except as otherwise provided in this article, the provisions of this chapter as to the courses of study, the qualifications and employment of teachers and the maintenance, conduct and supervision of public schools in union free school districts shall apply to a central high school district.”
The Board of Education of Central High School District No. 2 of the Towns of Hempstead and North Hempstead, Nassau County, in January, 1964 requested the State Commissioner of Education, the respondent herein, to make an enumeration of the inhabitants of the district as provided for in section 1711 of the Education Law, looking forward of course to the appointment of a Superintendent of Schools by the Board of Education of the District. The Board of Education of Union Free School District No. 16 of the Town of Hempstead, Nassau County, at about the same time made the same request. Both requests were refused by the respondent.
It is the position of the petitioners herein that they are entitled to the enumerations requested as a matter of right, and that the only limitation on their powers to appoint District Superintendents is an enumeration of less than a minimum population in each district of 4,500 inhabitants. With that position the court does not agree. Prior to 1947 the statute (§ 1711, subd. 3) provided: “ The commissioner of education shall thereupon cause an enumeration * * * to be made.” The statute was amended in 1947 (L. 1947, ch. 666) by substituting the permissive word may for the mandatory word shall.
It must be concluded that discretionary power was given to the Commissioner of Education by the amendment. No other valid and substantial purpose can be envisaged. The effect of course is to give a veto power to the Commissioner over the power of a district board to appoint a Superintendent, and it can be readily agreed that the Legislature might have used more express terms. Courts however have to take statutory *184 language as they find it and not that which may have been adopted in conformity with the counsel of perfection.
The legislative history of the amendment lends support to this construction. The Joint Legislative Committee on the State Education System in 1947 was apprised that a number of complaints had been made about the operation of section 1711 in its then automatic form, and that such complaints dealt in part at least with abuses detrimental to the administration of the educational system. The committee introduced the amendment in question and it became chapter 666 of the Laws of 1947. The Bill Jacket for such law shows two memoranda submitted to the Governor; one by Counsel to the State Education Department and the other by Assemblyman Herbert A. Rapp, a member of the Committee. The former reads: “ This bill was introduced at the request of the Department. Prior to the amendment the law required an enumeration in order to determine whether or not a district should have a superintendent of schools. * * * There should be discretion on the part of the Commissioner to determine whether the area involved in the request for enumeration is the kind of area that may properly be supervised by a superintendent of schools.” The other reads: “Appointment of superintendents in union free school districts of over 4500 heretofore was based on a mandatory census. This bill makes that census permissive and thereby gives the Commissioner of Education the opportunity to prevent appointment of a superintendent in the many cases where such appointment would be a disservice to the education system, such as, for instance, in cases where * * * the district is of such a nature as not to be benefitted from the appointment of a superintendent ’ ’. While not conclusive, the foregoing furnishes strong proof of legislative intent to give the Commmissioner of Education the responsibility of determining the educational soundness and desirability of creating any new superintendency by giving him discretion in each individual case thereafter arising.
Since it is held that the Commissioner had discretion in the matter, the only question before the court is whether his refusal to direct an enumeration was, under the circumstances, an unreasonable exercise of such discretion or to put it more succinctly whether his refusal had any rational basis to support it. The alleged issue of unconstitutionality, not pleaded, is without substance. The ease of Packer Collegiate Inst. v. University of the State of N. Y. (298 N. Y. 184) is not at all apposite, even if the issue had been properly pleaded.
The basis of the Commissioner’s exercise of discretion is the standards for enumerations to be applied to determine whether a *185 district may employ a Superintendent of Schools, worked out hy the Department of Education over the years, copies of which are attached to the answers herein. Two of these standards are especially pertinent: “ 1. Evidence of enrollment in grades K-12 exceeding 2000 pupils ’ ’; and ‘ ‘ 2. Evidence that instruction is provided for all grades K-12 ’ ’. In the present case the Central High School District Board has no control over grades kindergarten through 6, and, conversely, the component Union Free School District Board has no control over grades 7 through 12. The standards for enumerations are designed to prevent the appointment of a district superintendent who is not responsible for the entire system, grades kindergarten through 12. This is in keeping with the historical concept of a Superintendent of Schools. There is presently a District Superintendent of Schools with jurisdiction over the districts complaining here, who is the local representative of the respondent and subject to Ms control. The appointment of two local superintendents over districts which do not constitute a complete school system, and who would be responsible only to local boards, thus eliminating the jurisdiction of the present District Superintendent over such local districts, would result in no educational advantage whatever.
As the court reads the record such is the rationale underlying the determination of the respondent Commissioner. Whether one agrees wholly with it or not, the Commissioner’s determination cannot be logically found to have no rational basis.
Petitions in both instances should be dismissed, without costs.